UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STANLEY J. BRUMFIELD                        CIVIL ACTION

VERSUS                                      NO. 08-1072

PETER LOFTON, III                           SECTION "D"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2)(2006).[1]

I.     **Factual and Procedural Background**

The petitioner, Stanley J. Brumfield ("Brumfield"), is a convicted inmate incarcerated in the Avoyelles Detention Center in Marksville, Louisiana.[2]  He filed this application for the issuance of a writ of habeas corpus seeking a reversal of the Trial Court's denial of the Motion to Suppress the

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 1.

gun, reverse his conviction, vacate the sentence, and provide him with a new trial, because the "protective sweep" in the case exceeded the principles of the Fourth Amendment.

A.    **Factual Summary**

On February 11, 2005, Daimar Gustave went to April Preston's ("April") house in Thibodaux, Louisiana to see if she wanted to come back to his cousin's house to record some rap music.[3]  Daimar had dated April in the past.  When Daimar knocked on April's door, Stanley Brumfield, April's boyfriend, opened the door and struck Daimar in the face with a handgun. Daimar was cut above his left eye.  Brumfield then pointed the handgun at Daimar and told him that if he came any closer, he would blow his head off.  Brumfield went back into the house, and Daimar left and called the police.

After Brumfield struck Daimar, April and Brumfield went across the street to a neighbor's house.  They used the phone and left.  While April and Brumfield were standing outside, Daimar and his friends came back to the scene.  When April and Brumfield saw Daimar and heard police sirens, they ran to another neighbor's house, a trailer home owned by Tammy Carcisse.  Apparently, Daimar saw Brumfield go into the trailer.

Deputy Treverse Johnson of the Lafourche Parish Sheriff's Office investigated the incident. Daimar told Deputy Johnson what happened and pointed out the trailer to which Brumfield ran. Deputy Johnson approached the trailer and knocked on the door.  Roland Carcisse, Jr., Tammy's fifteen-year-old son who lived there, after initially denying that Brumfield was there, told Deputy Johnson that Brumfield was inside and pointed out the bedroom in which he was.  Deputy Johnson

---

[3]The facts are taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal, and as necessary from the summary of facts appearing in the State's brief on appeal.  *State v. Brumfield*, 944 So. 2d 588, 591-92 (La. App. 1st Cir. 2006); St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2005-KA-2500, pp. 2-3, 9/20/06.

entered the trailer and found the defendant and April hiding in the bedroom.  The Deputy apprehended Brumfield and searched him for weapons, and found none.  He placed Brumfield in the back of his police unit.  He then went back into the trailer to search for the handgun that Brumfield had used to strike Daimar.  Deputy Johnson found a loaded .38 caliber Lorcin pistol in the cabinet under the bathroom sink.  The bathroom was adjacent to the bedroom where Brumfield was found.  The handgun was introduced as evidence at the trial.

      **B.**      <u>**Procedural History**</u>

Brumfield's  original appointed counsel filed a motion to suppress the weapon found at the trailer where Brumfield was arrested.[4]  The Trial Court held evidentiary hearings on the motion to suppress on June 1, 2005 , after which the Court denied the motion to suppress the weapon.[5]

On July 27, 2005,  the matter came on for trial before a jury.[6]  On July 28, 2005, the jury returned a verdict of guilty of possession of a firearm by a convicted felon and aggravated battery.[7]  On August 23, 2005, Brumfield was sentenced to 12 years at hard labor with credit for time served for the charge of possession of a weapon by a felon.[8]  The Court also sentenced Brumfield to serve 10 years at hard labor for the aggravated battery conviction, with the sentences to run concurrently.[9]

On appeal to the Louisiana First Circuit Court of Appeal, Brumfield alleged that the Trial Court erred in denying the motion to suppress the gun on the grounds that the investigating officer

---

[4]St. Rec. Vol. 1 of 3, Motion To Suppress Evidence, 4/13/05.

[5]St. Rec. Vol. 1 of 3, Motion Hearing Minutes, 6/1/05.

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 7/26/05.

[7]St. Rec. Vol. 1of 3, Trial Minutes, 7/27/05.

[8]St. Rec. Vol. 1 of 3, Sentencing Minutes, 8/23/05.

[9]*Id.*

did not have consent to enter the premises to search for Brumfield nor did he have consent to or a warrant to search for the handgun.[10]  On September 20, 2006, the Louisiana First Circuit affirmed the convictions finding no merit to the claim.  Specifically, the Court held as follows: (1) Brumfield had no reasonable expectation of privacy in trailer where his handgun was seized; (2) evidence established that the minor resident of trailer home freely gave officer consent to search trailer for Brumfield; (3) the Officer's search for the handgun was pursuant to the exigent circumstances exception to warrant requirement; and (4) the officer's warrantless search did not exceed the scope of what was necessitated by exigency circumstances.

The appellate court also affirmed Brumfield's sentence on the aggravated battery charge and vacated and remanded for re-sentencing on the felon in possession charge, because the Court failed to impose the mandatory fine.  The Trial Court re-sentenced him on November 13, 2006, to serve 12 years at hard labor and to pay a fine of $1,000.00 plus court costs.[11]

In the meantime, on October 4, 2006, Brumfield's counsel filed an application for rehearing with the Louisiana First  Circuit which the Court denied without stated reasons on December 28, 2006.[12]  Brumfield's application to the Louisiana Supreme Court was also denied without stated reasons on September 28, 2007.[13]

Brumfield's conviction became final 90 days later, on December 27, 2007, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513

---

[10]*State v. Brumfield*, 944 So. 2d at 92; St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2005-KA-2500, p. 3, 9/20/06.

[11]St. Rec. Vol. 1 of 3, Minute Entry, 11/3/06.

[12]St. Rec. Vol. 3 of 3, Application for Rehearing, 10/4/06; 1st Cir. Order, 2005-KA-2500, 12/28/06.

[13]St. Rec. Vol 3 of 3, La. S. Ct. Order, 2007-K-0213, 9/28/07.

(5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered

in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    **Federal Petition**

On February 28, 2008,  the Clerk of this Court filed Brumfield's petition for federal habeas

corpus relief in which he raised four grounds for relief:[14]

(1)    the Trial Court erred  in denying the motion to suppress the gun where the court found that the deputy had permission to enter the residence but did not find that he had consent to search the residence for the handgun;

(2)    the Trial Court's denial of the motion to suppress was not harmless error where the court rejected Deputy Johnson's testimony claiming that he conducted a protective sweep of the premises to protect small children, who were not at home;

(3)    the Trial Court erred in denying the motion to suppress where the State failed to meet its burden of proving that the warrantless search of the premises was justified by exigent circumstances, because the seizing deputy had no probable cause since he could not have perceived any danger where the gun was found in a different room and Brumfield was already handcuffed and in the patrol car; and

(4)    the evidence was insufficient to support the conviction where his testimony was that he hit Gustave with his fist and he denied having a gun, and there was no blood on the gun, the towels, or in the cabinet where the gun was found, nor were there any fingerprints or medical report after the incident.

The State filed a response in opposition to Brumfield's petition arguing that his petition

should be denied because Brumfield failed to exhaust the available state remedies such that his

petition is premature.  In light of this defense, the State did not formally address the substantive

contentions, but reserved its right to do so should the Court deem it appropriate.

---

[14]Rec. Doc. No. 1.

### III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[15] applies to this petition, which is deemed filed in this court under the federal mailbox rule on February 19, 2008.[16]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State has raised the defense that Brumfield has not exhausted state court remedies.  For the following reasons, the Court's review reveals that Brumfield has not raised each of his grounds for relief in the state courts.

### IV.    Failure to Exhaust Available Remedies (Claim Nos. Two, Three, and Four)

####     A.    Standards of Review for Exhaustion

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  *Preiser v. Rodriguez*, 411 U.S.

---

[15]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[16]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The Clerk of Court filed Brumfield's federal habeas petition on February 19, 2008, when the filing fee was paid.  Brumfield dated his signature on the petition on January 29, 2008.  This is presumed to be the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court.  *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).  The habeas petitioner bears the burden of proving exhaustion of state court remedies. *See Matthews v. Evatt*, 105 F.3d 907, 912 (4th Cir. 1997).

In this case, the State recognizes Brumfield's failure to exhaust in a general context.  After a thorough review, the Court finds that Brumfield has not exhausted his remedies as to claims two, three, and four.  The record demonstrates that Brumfield  has exhausted his available state court remedies as to only the first issue, which he raised on direct appeal and to the Louisiana Supreme Court in his related writ application.  The record shows that the issue of whether the trial court erred

in denying the motion to suppress where it found that the police had permission to enter the residence but did not also find consent to search the residence for the handgun was squarely presented to the state courts.

However, the remaining three issues were never presented to any state court for review. Consequently, Brumfield's claims two, three, and four are not exhausted. He did not seek substantive relief or properly raise any of these claims in the state courts. His federal petition is therefore considered to be a mixed petition, containing both exhausted an unexhausted claims. The record discloses no good cause for Brumfield's failure to properly and fully exhaust all of his claims and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

**B.      Technical Exhaustion and Procedural Default**

Normally, the Court would recommend that Brumfield's petition be dismissed without prejudice to allow him to pursue exhaustion of his claims in the appropriate state courts. However, unexhausted claims, those claims which were not "fairly presented" to the state courts, may be considered "technically" exhausted if the habeas petitioner is now prohibited from litigating those claims in the state courts because of some procedural rule. If that is so, then those "technically" exhausted habeas claims might be considered procedurally defaulted.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and thereafter would be barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (citing *Coleman*, 501 U.S. at 731-33; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)); *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir. 1998). In such a case, there is no difference between non-exhaustion and

procedural default. *Magouirk*, 144 F.3d at 358.  Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted and may be dismissed. *Id.*

In this case, it is reasonable to conclude that Brumfield is now unable to litigate claims two, three, and four in the Louisiana courts, and that any attempt to litigate these claims would result in dismissal on state procedural grounds.  The State recognizes this in its opposition memorandum where it indicates that Brumfield had to present any post-conviction claims to the Louisiana courts within two years of the finality of his conviction.  Pursuant to La. Code Crim. P. art. 930.8, a convicted state defendant has a two-year period of limitations to litigate post-conviction claims.  The failure to do so would undoubtedly be invoked by the state courts to bar any further collateral litigation by Brumfield.[17]

Therefore, these claims can now be considered procedurally defaulted.  *Sones*, 61 F.3d at 416 (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)).  The record does not reflect any reason other than inadvertence and an incomplete recitation of the case's procedural history for the State's failure to raise this defense in its briefs.  *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk*, 144 F.3d at 360).  Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.**  *Magouirk*,

---

[17]Art. 930.8 provides in part that "No application for post-conviction relief ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 . . . ."  Under La. Code Crim. P. art. 914, Brumfield's judgment of conviction became final under state law when his Louisiana Supreme Court writ application was denied on September 28, 2007.  Clearly, more than two years have elapsed since that date and Brumfield has not indicated to this Court any effort to present his claims to the state court's on post-conviction review.

144 F.3d at 350, 360.  The Court therefore will address the procedural bar of these claims *sua sponte*.

### C.     <u>Cause and Prejudice</u>

Federal habeas review of "technically" exhausted but now procedurally defaulted claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750-51.  There is no obvious cause in the record for Brumfield's failure to timely and properly challenge claims two, three, and four in the state courts.  These claims were simply not pursued in the state courts and were instead raised in this federal petition for the first time.

Having failed to show an objective cause for his defaults, the Court need not determine whether prejudice existed and the petitioner has not alleged any actual prejudice.  *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### D.     <u>Fundamental Miscarriage of Justice</u>

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice.  To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt."

*Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

When the petitioner has not factually established his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903. In this case, Brumfield raises nothing that was not already presented to the jury at trial to support his suggestion that he is innocent. He, therefore, has presented nothing that would establish his actual innocence and nothing is apparent from the record.

Having determined that claims two, three, and four are procedurally barred, the Court finds these claims must be dismissed with prejudice without review of the merits. The Court, however, will proceed to review claim one.

## V.  Standards of Review on the Merits of Claim No. One

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings

of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *cf. Wright v. West*, 505 U.S. 277, 304 (1992).  The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634,

641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    Denial of Motion to Suppress and Violation of Fourth Amendment (Claim No. One)

Brumfield alleges that the Trial Court erred in denying the motion to suppress, because while the court determined that Deputy Johnson had permission to enter the trailer, he did not obtain consent to search for the gun and he did not have a warrant. The Trial Court held a full hearing on Brumfield's pretrial motion to suppress and denied the motion after finding no basis to suppress the evidence and probable cause for the arrest and search. The claims were also addressed and resolved against Brumfield by the Louisiana First Circuit on direct appeal. The Louisiana Supreme Court denied the subsequent writ application without reasons thereby acquiescing to the appellate court's reasoned decision. *Ylst*, 501 U.S. at 802.

In this case, the appellate court considered the issue of whether Deputy Johnson had consent to enter the premises to search for Brumfield and cause to search for the gun. The Court resolved that consent was clearly given to Deputy Johnson. In reviewing the testimony, the Court summarized the testimony upon which it relied.[18] Deputy Johnson testified at trial that, when he

---

[18]*State v. Brumfield*, 944 So.2d at 595.

knocked on the door of the trailer in which Brumfield and April were, Roland Carcisse first told him that they were not there.  Deputy Johnson explained to Carcisse that he could issue a search warrant and that, if Brumfield  was in fact found to be in the residence, Carcisse could be held accountable for aiding and abetting a fugitive.  At this point, Carcisse informed Deputy Johnson that the defendant was in the trailer.[19] When Deputy Johnson asked him where the defendant was, Carcisse told him that Brumfield was in the bedroom.  Roland pointed to the bedroom once Deputy Johnson was in the trailer.  The appellate court, therefore found that Carcisse freely gave Deputy Johnson his consent to search the trailer for Brumfield.[20]

The Court also resolved that the highly probable threat of the presence of a handgun in the trailer, where several children lived, created a special exigency for Deputy  Johnson to search for the gun. [21] The Court held that under these exigent circumstances, it was not unreasonable for Deputy Johnson, in protecting the safety and welfare of children, to search for and seize Brumfield's loaded handgun from the trailer immediately after he secured Brumfield in the police unit and after he questioned Preston about the incident and the use of the weapon.[22]

The Louisiana First Circuit further held that the scope of Deputy Johnson's warrantless search did not exceed what was necessitated by the exigency.  Deputy Johnson did not look for anything else, and he looked only in the immediate area from which Brumfield had been seized.[23] Deputy Johnson, according to the Court, simply found the handgun and seized it.  The Court also

---

[19]*Id.*

[20]*Id.*

[21]*Id.*, 944 So. 2d.at 597.

[22]*Id.*

[23]*Id.*

noted that the entire incident from the time Brumfield was placed into custody to the time the handgun was discovered, took only approximately 20 minutes.  Consequently, the Court found that the  Trial Court did not err in denying the motion to suppress.[24]

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*., 428 U.S. at 494.  A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'"  (emphasis in original) *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984).  The bar of *Stone v. Powell* applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim.  *Andrews v. Collins*, 21 F.3d 612, 631-32 (5th Cir.

---

[24]*Id.* at 598.

1994); *Christian*, 731 F.2d at 1199 n.1; *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Brumfield does not argue or contend that he was denied a full and fair hearing on the Motion to Suppress or the Fourth Amendment claims raised before this Court.  The record shows that Brumfield and his counsel presented the arguments in support of his claims that the warrant was invalid and that the evidence should be suppressed to the Trial Court, which conducted a full hearing.  He then presented the claims to the Louisiana First Circuit on direct appeal, which considered the claims in a full published opinion.  The claims were then brought to the Louisiana Supreme Court, which granted no relief.  After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  *Andrews*, 21 F.3d at 631.

The state courts provided Brumfield, who was assisted by counsel throughout, with the opportunity to litigate his Fourth Amendment claims fully and fairly.  The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the *Stone v. Powell* bar to federal review.  *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002).

Accordingly, *Stone v. Powell* bars review of Brumfield's claim.  *Id.*; *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994).  Brumfield's claims must be dismissed with prejudice.

## VII.   **Recommendation**

It is therefore **RECOMMENDED** that Stanley J. Brumfield's petition for issuance of a writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings  and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[25]

New Orleans, Louisiana, this 17th of December, 2010.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[25]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

17